**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

ADAM WEST,

                                Plaintiff,

              v.                                                    No. 9:22-CV-0231
                                                                          (MAD/CFH)
C. LEGREE, et al.,

                                Defendants.

_____

**APPEARANCES:**                                    **OF COUNSEL:**

ADAM WEST
Plaintiff pro se
14-A-5495
Groveland Correctional Facility
7000 Sonyea Road
Sonyea, New York 14556

HON. LETITIA JAMES                          NICHOLAS W. DORANDO, ESQ.
New York State Attorney General           Assistant Attorney General
Attorney for Defendants
Legree and Murphy
The Capitol
Albany, New York 12224

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

       Plaintiff pro se Adam West ("West" or "Plaintiff"), who was, at all relevant times, in the

custody of the New York Department of Corrections and Community Supervision

("DOCCS") at Great Meadow Correctional Facility ("Great Meadow C.F."), brings this action

pursuant to 42 U.S.C. § 1983 against Defendants Sergeant Christopher Lagree ("Lagree"),

_____

       [1]  This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C.
§ 636(b) and N.D.N.Y.L.R. 72.3(c).

Lieutenant George Murphy ("Murphy"), and Corrections Officers John Does #1, #2, and #3

for violations of his constitutional rights under the Fourth and Fourteenth Amendments.

See Dkt. No. 1 ("Compl.").

Presently before the Court is Plaintiff's partial motion for summary judgment pursuant to

Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). See Dkt. No. 30.

Defendants opposed the motion. See Dkt. No. 31. Plaintiff relied. See Dkt. No. 34. For

the following reasons, it is recommended that Plaintiff's motion be denied.

## I. BACKGROUND

### A. Facts[2]

In support of the motion, Plaintiff filed a Statement of Material Facts.[3] Dkt. No. 30-4.

---

[2] The parties provided exhibits with their submissions, without objection or challenges to the authenticity of any documents. Therefore, to the extent that the "facts" asserted by the parties are supported by the record, the undersigned will consider the facts and relevant exhibits/documents in the context of the within motion. See Daniel v. Unum Provident Corp., 261 Fed. App'x 316, 319 (2d Cir. 2008) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party.").

[3] Local Rule 56.1 states:

Summary Judgment Procedure

(a) Statement of Material Facts: Any motion for summary judgment shall contain a separate Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits. Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.

The moving party shall also advise pro se litigants about the consequences of their failure to respond to a motion for summary judgment. See also L.R. 56.2. For the recommended Notification of the Consequences of Failing to Respond to a Summary Judgment Motion, visit the District's webpage at Notification of Consequences.

(b) Response to Statement of Material Facts: The opposing party shall file a separate Response to the Statement of Material Facts. The opposing party response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in

2

Defendants responded to the Statement of Material Facts. Dkt. No. 31-1. The facts recited are for the relevant time period as referenced in the complaint and are related herein in the light most favorable to Defendants as the nonmoving parties. See subsection II(A) infra.

In August 2021, West was confined in Drug Watch Room #1 after he used a mattress to block the view of his cell. Dkt. No. 30-1 at 2. On August 11, 2021, West was moved to Drug Watch Room #2 so that Room #1 could be searched. Id. at 2, 13. At approximately 3:00 p.m., Officer Hall[4] searched Room #1. Dkt. No. 31-2 at 67-69. No contraband was found. Dkt. No. 31-2 at 69.

On August 12, 2021, at approximately 7:45 a.m., before West returned to Room #1, Officer Londrigan[5] searched the room. Dkt. No. 30-1 at 2, 4. As a result of that search, West received a misbehavior report charging him with possessing contraband, a weapon, and smuggling. Id.; Dkt. No. 31-2 at 104. Londrigan reported:

> On 8/12/21 at approximately 7:45 AM I was directed by my supervisor to perform a cell search of cell DWW #1. The cell was searched prior to inmate West, Adam 14A5495 being admitted and was found to be clear of all contraband. While I was searching the cell I noticed there was debris shoved into the rear right corner of the cell. I cleared away the debris and recovered 2 broken pieces of black ceramic razor blade. I

---

matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert. In addition, the opposing party's Response may set forth any assertions that the opposing party contends are in dispute in a short and concise Statement of Additional Material Facts in Dispute, containing separately numbered paragraphs, followed by a specific citation to the record where the fact is established. The moving party may reply to the opposing party's contended assertions in a separate Reply Statement and/or its Reply Memorandum of Law.

[4] Hall is not named as a defendant in this action.

[5] Londrigan is not named as a defendant in this action.

3

> secured the contraband on my person and completed the cell search with no further contraband being found. The first piece of broken razor blade measured 1/8" x 1/8" and the second measured 1/4" x 1/8". I had the weapons photographed, sealed them in an evidence bag with tag# 24399, and placed them in the secure evidence drop box in accordance with directive 4901A.

Dkt. No. 30-1 at 2; Dkt. No. 31-2 at 104.

On August 13, 2021, a second misbehavior report was issued. Dkt. No. 31-2 at 103.

West was charged with disobeying a direct order and an unhygienic act. Id. Officer Miller[6]

reported:

> On the above date, time, and location Inmate West #14A5495 told me he had to defecate. I told Inmate West I had to call the area sergeant and that he had to wait for the sergeant to come. I called the sergeant and told him Inmate West had to defecate. Inmate West took off his jump-suit and started to defecate on the cell floor. I gave Inmate West a direct order to stop and wait for the sergeant. Inmate West continued to defecate on the floor.

Dkt. No. 31-2 at 103.

On August 17, 2021, West was transferred to keeplock confinement pending a Tier III

hearing. Dkt. No. 30-4 at ¶ 2; Dkt. No. 31-1 at ¶ 2.

On August 20, 2021, West met with Assistant Demarsh and requested documents and

evidence to prepare a defense against the charges in the misbehavior reports. Dkt. No. 30-

1 at ¶ 4; Dkt. No. 31-1 at ¶ 4. Of relevance herein, West requested "video/audio of search

8/11 from 2:00 pm - 5:30 pm" and "video/audio 8/12 7:00 am - 7:45 am[.]" Dkt. No. 30-1 at

---

[6] Miller is not named as a defendant in this action.

4

7; Dkt. No. 31-5 at 112.[7]  West also asked Demarsh to interview the "porter that cleans DW room," Inmate Alvarado, Sergeant Woodruff, Londrigan, and Officer Hall.  Dkt. No. 30-1 at 7.

On August 20, 2021, Lieutenant DeFranco[8] executed a Tier Hearing Video Preservation Form indicating that video from August 11, 2021, (from 2 pm - 5:30 pm) and August 12, 2021, (from 7 am - 7:45 am) had been preserved.  Dkt. No. 30-1 at 6.

On August 31, 2021, a Tier III hearing commenced, with Murphy presiding.[9]  Dkt. No. 30-1 at 9; Dkt. No. 31-2 at 37.  At the beginning of the hearing, West reiterated his request for the August 11th and August 12th videos.  Dkt. No. 31-2 at 53.  Murphy read the misbehavior reports into the record and the hearing was adjourned.  Id. at 53-57.

On September 7, 2021, the hearing reconvened.  Dkt. No. 31-2 at 57.  Murphy began the hearing by playing the video depicting Officer Londrigan's August 12th search.  Id. at 57-58.  West asked for permission to describe, on the record, what the video depicted.  Id. at

---

[7]  In the response to Plaintiff's Statement of Undisputed Facts, Defendants question the authenticity of the Assistant Form.  Dkt. No. 31-1 at 4.  The Court however, will accept the Assistant Form as Defendants annexed the same form as an exhibit to their opposition papers.  See Dkt. No. 31-2 at 112.

[8]  DeFranco is not a defendant in this action.

[9]  The transcript of the disciplinary hearing is an exhibit to Defendants' opposition.  Dkt. No. 31-2 at 51-76.  Plaintiff agrees that the transcript is a "good representation of the hearing" but objects to the extent that Sergeant Woodruff's and C.O. Londrigan's testimony was not documented.  Dkt. No. 34 at 1.  The Court notes that the complaint does not include a due process claim based on the failure to record the entire disciplinary hearing.  Even assuming, arguendo, that plaintiff had asserted such a claim, the failure to record the disciplinary hearing does not create a constitutional claim.  See Dixon v. Goord, 224 F.Supp.2d 739, 744 (S.D.N.Y. 2002) ("While New York law requires that an electronic record of a disciplinary hearing be maintained, 7 N.Y.C.R.R. § 254(b), such a record is not constitutionally required.") (citation omitted); see also Cepeda v. Urban, No. 12-CV-00408, 2014 WL 2587746, at *10 (W.D.N.Y. June 10, 2014) ("[Section] 254.6(a)(2) provides a procedural requirement in excess of that required by federal due process such that the failure to abide by § 254.6(a)(2) does not run afoul of the basic federal due process required for an inmate disciplinary proceeding."); see also Richardson v. Williams, No. 15 CV 4117, 2017 WL 4286650, at *7 (S.D.N.Y. Sept. 26, 2017) ("Because the rule that disciplinary hearings be electronically recorded is derived from state law, and is not required as a matter of constitutional procedural due process, plaintiff's claim that the failure to adhere to the recording requirement violated his constitutional rights is baseless.").

5

62.  Murphy agreed and allowed West to "interpret" the video.  Id.

Officer Miller was called to testify regarding the August 13th misbehavior report.  Dkt. No. 31-2 at 59.  After Miller was excused, Murphy indicated that he intended to play the "second portion of the video tape" produced for the hearing.  Id. at 66.  The video showed Officer Miller and the August 13th incident involving West defecating on the floor.  Id.  West objected and stated that it was "the wrong video" and repeated his request for the August 11th video depicting Hall's search of Room #1.  Id.  The hearing was adjourned.  Dkt. No. 31-2 at 67.

On September 15, 2021, the hearing reconvened.  Dkt. No. 31-2 at 67.  Officer Hall and Inmate Alvarado were called to testify.  Id. at 67-70.  Officer Hall testified that, during the course of his search, he flipped the mattress, got down on the floor, and went through debris and dirt in the cell, including feces on the floor.  Id. at 67-69.  Inmate Alvarado, a porter in the facility hospital, testified that when an inmate moved out of the drug room, he would bleach the room, scrub the floors, walls, and windows, and sweep out any trash.  Id. at 69-70.  With respect to West, Alvarado did not recall finding any weapons in that cell. Dkt. No. 31-2 at 70.

After all of the evidence was received, West and Murphy discussed the August 11th video:

> Murphy:  All right, before you, so all the evidence you have asked for has been presented except for the video.  You wanted the video of, let me see what date was on that video. You wanted 2 pm to 5:30, correct?
>
> West: Yes.
>
> Murphy: 8/11?

West: Yes.

Murphy: I have summoned that video [and it] is unattainable. There is no video evidence of that.

West: Um that's what I have originally requested from you from the start when we first read into the record that is the video that I spoke about and requested so ah up until now it seems like you assisted so late you requested the wrong video it seems like now, we (inaudible) we won't see this video anymore. You requested a video I never even asked for, so I would like to object to that.

Murphy: Objection noted.

Dkt. No. 31-2 at 71.

At the conclusion of the hearing, Murphy found West guilty of all charges and sentenced him to 270 days in the Special Housing Unit ("SHU"). Dkt. No. 30-1 at 9; Dkt. No. 31-2 at 37.

On September 20, 2021, West timely appealed the hearing disposition. Dkt. No. 30-4 at 6; Dkt. No. 31-1 at 6. On November 17, 2021, the penalty was modified. Id. at 8.

On March 14, 2022, West's counsel filed an Article 78 petition. Dkt. No. 30-4 at 9; Dkt. No. 31-1 at 9. On June 17, 2022, the Superintendent's hearing was reviewed and reversed. Id. at 10.

## B.  Procedural History

In March 2022, West commenced the within action. Dkt. No. 1. Upon review of the complaint, the Court found that Plaintiff had sufficiently alleged Fourth Amendment claims against defendants C.O. John Does 1, 2, 3, and Legree and a Fourteenth Amendment procedural due process claim against defendant Murphy and directed defendants to respond. Dkt. No. 12.

7

On November 21, 2022, Legree and Murphy filed an answer.  Dkt. No. 22.

On May 14, 2023, West filed the within motion pursuant to Fed. R. Civ. P. 56 seeking partial judgment as a matter of law.  Dkt. No. 30.  Defendants oppose the motion.  Dkt. No. 31.

## II.  Discussion[10]

Plaintiff moves for judgment as a matter of law against Murphy arguing that the evidence establishes that Murphy's failure to inquire about the August 11th video prejudiced Plaintiff's defense and deprived him of his right to due process.  See Dkt. No. 30.

### A.  Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion.  FED. R. CIV. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 317, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing a genuine issue for trial.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  For a

---

[10]  All unpublished decisions cited herein, unless otherwise indicated, are attached to this Report-Recommendation.

court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party. Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

### B. Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment states: "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. CONST. AMEND. XIV § 1. To set forth a prima facie due process claim, "a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (citation and quotation marks omitted); see Mitchell v. Keane, 974 F.Supp. 332, 342 (S.D.N.Y. 1997) ("To state a procedural due process claim challenging a disciplinary action, a prisoner must allege both that he was deprived of a liberty interest cognizable under the Due Process Clause, and that he was deprived of that interest without the requisite [procedural due] process.").

### 1. Liberty Interest

An inmate has a protected liberty interest in being free from segregated confinement but only where the alleged deprivation imposed amounts to an "atypical and significant hardship in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 483-84 (1995). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary

segregation imposed compared to discretionary confinement.' " <u>Davis v. Barrett</u>, 576 F.3d 129, 133 (2d Cir. 2009) (quoting <u>Sandin</u>, 515 U.S. at 484). For the purposes of this motion, Defendants do not argue that West's SHU confinement failed to constitute a deprivation of a cognizable liberty interest.

### 2. Procedural Due Process

The due process protections afforded an inmate do not equate to " 'the full panoply of rights' due to a defendant in a criminal prosecution." <u>Sira v. Morton</u>, 380 F.3d 57, 69 (2d Cir. 2004) (quotation omitted).

> Nevertheless, an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken.

<u>Id.</u> (citing <u>Wolff v. McDonnell</u>, 418 U.S. 556, 563-67 (1974)).

An accused prisoner has the right to a hearing where he is given the reasonable opportunity to call witnesses and present documentary evidence. <u>See</u> <u>Sira</u>, 380 F.3d at 69. If the decision is made to refuse an inmate's request for witnesses or evidence, prison officials are not required to "put their reasons for refusing the inmate's request in writing or into the administrative record of the disciplinary hearing," however, "due process does require that prison officials 'at some point' state their reasons for refusing the inmate's request." <u>Gonzalez v. Chalk</u>, No. 13 Civ. 5486, 2014 WL 1316557, at *5 (S.D.N.Y. Apr. 1, 2014) (citing <u>Ponte v. Real</u>, 471 U.S. 491, 492 (1985)); <u>LeBron v. Artus</u>, No. 06-CV-0532, 2008 WL 111194, at *10 (W.D.N.Y. Jan. 9, 2008) ("When an inmate is precluded from obtaining certain witness testimony or other evidence, due process requires that the inmate

be provided reasons for the denial either at the disciplinary hearing or at a later time." ) (citation omitted).

"To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing." Clark v. Dannheim, 590 F.Supp. 2d 426, 429 (W.D.N.Y. 2008).

Here, it is undisputed that West made several requests for the August 11th video and that the video was "preserved" for the hearing.  Dkt. No. 31-2 at 53, 66, 71.  West claims that Murphy violated his due process rights because he did not explain why the August 11th video "was unattainable and did not indicate, on the record, that he made a reasonable inquiry into whether the video existed or why it could not be produced." Dkt. No. 30 at 6.

The fact that the subject video was "unattainable," without more, does not constitute a Fourteenth Amendment violation.  See Benitez v. Locastro, No. 9:04-CV-423 (NAM/RFT), 2010 WL 419999, at *15 (N.D.N.Y. Jan. 29, 2010) (rejecting the plaintiff's argument that his due process rights were violated because the video evidence was unavailable) (citation omitted).  To warrant an award summary judgment, West must prove, with competent, admissible evidence, that Murphy failed to make "a constitutionally significant inquiry into the existence and whereabouts of the video." Purcelle v. Thomas, No. 9:18-CV-77 (GLS/TWD), 2020 WL 1516421, at *13 (N.D.N.Y. Mar. 6, 2020), report and recommendation adopted, 2020 WL 1511079 (N.D.N.Y. Mar. 30, 2020).  Here, there is no evidence to suggest that Murphy did not make such an inquiry.

Moreover, although Murphy did not provide an explanation on the record regarding his efforts to "summon" the video or what he meant when he said the video was "unattainable"

11

or that "there is no video evidence of that," Dkt. No. 31-2 at 71, those facts, without more, do not support an award of summary judgment. Although "[i]t would aid reviewing courts if prison disciplinary officers gave their reasons for denying an inmate's request["], "[the Supreme Court] [did not] require the disciplinary board to explain why it denied the prisoner's request, nor did [the Court] require that those reasons otherwise appear in the administrative record." Thomas v. Calero, 824 F.Supp.2d 488, 501–02 (S.D.N.Y. 2011). Here, the record lacks sufficient evidence to allow the Court to conclude that Murphy failed to offer "some explanation," "at some point," as to why the video was not produced. West did not address this specific issue and Murphy did not provide an affidavit. Accordingly, this issue is best left to a jury to resolve. See Pertgen v. Baca, et al., No. 3:19-CV-00534, 2024 WL 64821, at *3 (D. Nev. Jan. 5, 2024) (denying the plaintiff's motion for summary judgment related to the denial of his request to present video evidence at disciplinary hearing noting, inter alia, that the defendant may have "had a legitimate penological reason for not granting the request").

West also argues that Murphy never told Plaintiff that "he had [the video] then lost it." See Dkt. No. 34 at 2. However, the hearing transcript does not support this conclusory assertion. On August 31, 2021, at the commencement of the hearing, Murphy and West engaged in a discussion regarding Plaintiff's requested witnesses and evidence. Dkt. No. 31-2 at 52. West reiterated his request for two videos, one from August 11th (5:30 to 7:15) and the other from August 12th (7:00 to 8:30). Id. at 53. Murphy responded, "Well, I have the video right here." Id. At that time, Murphy did not indicate which videos, or how many videos, he had in his possession. As revealed later in the hearing, Murphy was, in fact, in possession of two videos, one from August 12th and the other from August 13th. There is

no evidence in the record to support the conclusion that Murphy "lost" the subject video.

Even assuming the failure to consider the video was a procedural error, West has not established, with admissible evidence, that the failure to consider the video resulted in prejudice.  See Purcelle, 2020 WL 1516421, at *13.  West argues that the video evidence would have "clarified that CO Hall's search was sufficiently thorough to locate any contraband present at the time of that search" supporting his claim that the contraband recovered by Londrigan, sixteen hours later, could not have been traced back to him.  See Dkt. No. 30-1 at 16.  West also contends that he was not informed that the video was "unattainable" until after Hall had testified and, had he been aware earlier, he would have posed different questions to Hall.  Dkt. No. 30 at 7.  Defendants argue that the video "would have been of dubious relevance" because witness' testimony established that the rooms are searched and cleaned in between occupants.  Dkt. No. 31 at 7.

Here, the record establishes that West was presented with the opportunity to call witnesses and present evidence on his behalf.  Murphy played and reviewed a video recording depicting Londrigan's search of the drug watch room and allowed West to describe, on the record, what was depicted on the tape.  At West's request, Murphy called five witnesses and provided West with an opportunity to question the witnesses through him.  In response to West's questions, Officer Hall testified that, during the course of his August 11th search, he flipped the mattress, got down on the floor, and went through debris and dirt in the cell, including feces on the floor.  Dkt. No. 31-2 at 67-69.  Officer Hall testified that he did not recover any contraband.  Id.  Inmate Alvarado, a porter in the facility hospital, was also called as a witness.  Alvarado testified that when an inmate moved out of the drug room, he would bleach the room, scrub the floors, walls, and windows and sweep

13

out any trash.  Dkt. No. 31-2 at 69-70.  With respect to West, Alvarado did not recall finding any weapons in that cell.  Id. at 70.

Based upon a review of the record, the Court finds nothing to support the conclusion that the video of Hall searching the drug watch room would have provided evidence favorable to West beyond what was given by Hall and Alvarado.  Although West claims his "questions for Officer hall would have been different," had he known the video was not available, that argument is entirely speculative and conclusory.  See Jabot v. Correction Officer Minor, No. 9:13-CV-01407 (DNH/TWD), 2016 WL 5322113, at *13 (N.D.N.Y. July 15, 2016) (rejecting the plaintiff's argument that witness testimony would have affected the outcome of the hearing as speculative) (citation omitted), report and recommendation adopted, 2016 WL 5173279 (N.D.N.Y. Sept. 21, 2016).  West does not offer any evidence to support his contention that Hall's testimony would have been different and he fails to explain what that testimony would be.  See, e.g., Hampton v. McGinnis, No. 89 CIV. 6344, 1992 WL 309553, at *2 (S.D.N.Y. Oct. 15, 1992) (reasoning that the plaintiff must come forward with more than "speculative assertions that the absent witnesses may have had some testimony to offer," and "identify what that testimony would be").

In light of all of the testimony and documentary evidence, West has not established that the receipt of the subject video surveillance would be of value in determining the validity of the disciplinary tickets.  See Witkin v. Wise, No. 2:19 CV 0974, 2022 WL 379310, at *12 (E.D. Cal. Feb. 8, 2022) (reasoning that while the plaintiff has a due process right to present relevant documentary evidence, the surveillance video would not disprove that plaintiff disobeyed officer's orders) report and recommendation adopted, 2022 WL 16552661 (E.D. Cal. Oct. 31, 2022).

14

Having thoroughly reviewed the hearing transcript and record, the undersigned concules that there are issues of fact related to whether the hearing comported with the constitutional due process protections that must be afforded to an inmate's disciplinary proceedings.  Thus, it is recommended that Plaintiff's motion be denied.

### III.  CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that Plaintiff's motion for partial summary judgment (Dkt. No. 30) be **DENIED IN ITS ENTIRETY**; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: January 22, 2023
     Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

15