UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ADAM WEST,

        **Plaintiff,**

 vs.                 9:22-CV-231
                        (MAD/CFH)

CHRISTOPHER LAGREE and GEORGE
MURPHY,

        **Defendants.**

---

**APPEARANCES:**           **OF COUNSEL:**

**ADAM WEST**
14-A-5495
Cayuga Correctional Facility
P.O. Box 1186
Moravia, New York 13118
Plaintiff, *pro se*

**OFFICE OF THE NEW YORK**     **NICHOLAS W. DORANDO, AAG**
**STATE ATTORNEY GENERAL**    **KONSTANDINOS D. LERIS, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

   On March 10, 2022, Plaintiff Adam West commenced this action, *pro se*, pursuant to 42 US.C. § 1983 for violations of his constitutional rights under the Fourth and Fourteenth Amendments. *See* Dkt. No. 1. Plaintiff alleges that while incarcerated at Great Meadow Correctional Facility, Defendants Sergeant Christopher Lagree and Lieutenant George Murphy ("Defendants") improperly searched Plaintiff's cell, subjected him to X-rays, issued misbehavior

1

reports, and subjected him to a disciplinary hearing and sanctions. *See id.* On March 10, 2024, Magistrate Judge Christian F. Hummel issued a Report-Recommendation and Order on Defendants' motion for summary judgment. *See* Dkt. Nos. 50, 62. Magistrate Judge Hummel recommended that Defendants' motion be denied as it related to Plaintiff's Fourth Amendment claim against Defendant Lagree concerning the X-ray searches. *See* Dkt. No. 62 at 35. Magistrate Judge Hummel recommended that Defendants' motion for summary judgment otherwise be granted. *See id.*

Presently before the Court are Magistrate Judge Hummel's Report-Recommendation and Order, Plaintiff's objections, Defendant Lagree's objections, and the parties' responses. *See* Dkt. Nos. 62, 63, 64, 65, 66.

## II. BACKGROUND

For a complete recitation of the relevant factual background, the parties are referred to Magistrate Judge Hummel's Report-Recommendation and Order. *See* Dkt. No. 62 at 3-8.

## III. DISCUSSION

**A.    Standard of Review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

 Plaintiff's objections state as follows:

> I disagree with the Ruling giving [sic] by (CFH).  I was never "unsure" if Sg. Legree [sic] were involved in 8/4/21 search. He in fact gave the order to search me.  From the start [I] stood by X-ray scanning my body without my consent [indiscernible] is.
>
> Also Lt. Murphy idea to not fully record the tier 3 hearing arises to failure of due process.  For this is the recorders sole purpose.  I made it clear during my tier 3 Hearing of which tape [I] were [sic] requesting instead [I']m giving [sic] a video that he chose to produce on his own accord.

Dkt. No. 63 at 1.  These objections are general or restate arguments fully considered by Magistrate Judge Hummel.  Therefore, they will be reviewed for clear error.  *See Tavares v. Amato*, 954 F. Supp. 2d 79, 84 (N.D.N.Y. 2013).

 Defendants object solely to the portion of Magistrate Judge Hummel's Report-Recommendation and Order that recommended the denial of summary judgment on Plaintiff's Fourth Amendment against Defendant Lagree.  *See* Dkt. No. 64 at 3.  Defendant Lagree's objections are specific enough that the Court will conduct a *de novo* review of the issues presented.

**B. Lagree's Presence During a Strip Search**

 Magistrate Judge Hummel noted that Plaintiff was "unsure" about whether Defendant Lagree was present for the "strip search." Dkt. No. 62 at 20.  Plaintiff objects, stating that he was never "unsure" about whether Defendant Lagree was present for the "8/4/21 search." Dkt. No. 63 at 1.  Plaintiff then references an X-ray scan.  *See id.*  Plaintiff contends that in Defendant Lagree's "role as supervisor," he gave "the order for all searches ordered 8/4/21." Dkt. No. 66 at

3

3. Plaintiff notes that he emphasized his familiarity with Defendant Lagree in his complaint. *See id.* He asserts that he is "very sure Lagree ordered the cell search, the frisk, as well as the dryroom entry." *Id.* at 7.

As cited by Magistrate Judge Hummel, in paragraph sixteen of Defendants' statement of material facts, they averred that "Defendant Lagree states that he was not present when C.O. Lehoisky strip frisked Plaintiff." Dkt. No. 50-1 at ¶ 16. In Plaintiff's handwritten response to Defendants' statement of material facts, he responded to each of Defendants' statements by paragraph number. *See* Dkt. No. 56 at 1-3. As for paragraph sixteen, Plaintiff wrote, "unsure." *Id.* at ¶ 16.

Magistrate Judge Hummel appropriately recognized what Plaintiff stated in his response to Defendants' motion for summary judgment. *See* Dkt. No. 62 at 20. Magistrate Judge Hummel also correctly concluded that although Plaintiff did identify Defendant Lagree in his complaint, he did not sufficiently rebut Defendant Lagree's contentions on summary judgment. *See id.* at 18-20. Insofar as Plaintiff states in his response to Defendant Lagree's objections that Defendant Lagree was a supervisor, an individual's role as a supervisor is insufficient to establish personal involvement. *See* Dkt. No. 66 at 3; *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("'[S]upervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior'") (quotation omitted).

Alternatively, Magistrate Judge Hummel concluded that summary judgment was warranted on Plaintiff's strip-search claim because "there is no indication that this search was done in a humiliating manner, or otherwise conducted in an unreasonable manner unrelated to a legitimate penological concern." Dkt. No. 62 at 19. Plaintiff does not challenge this conclusion. *See* Dkt. Nos. 63, 65, 66. The Court agrees that Plaintiff "has not offered evidence from which a

reasonable jury could conclude that []he was strip searched for the purpose of intimidation, harassment, or punishment." *LaFever v. Clarke*, 525 F. Supp. 3d 305, 338 (N.D.N.Y. 2021). Based on the foregoing, the Court finds no clear error in this portion of Magistrate Judge Hummel's Report-Recommendation and Order. Dkt. No. 62 at 20.

**C.     Recording of Plaintiff's Disciplinary Hearing**

In reviewing Plaintiff's Fourteenth Amendment claim against Defendant Murphy, Magistrate Judge Hummel explained that "a failure 'to completely record the full tier hearing in its entirety' would 'not deprive [p]laintiff of any minimum requirements of due process.'" Dkt. No. 62 at 32 (quotation omitted). He thus concluded that Plaintiff did not demonstrate that he was denied sufficient process. *See id.* at 33.

Plaintiff objects that Defendant Murphy's failure to record the entirety of Plaintiff's Tier III hearing violates his right to due process. *See* Dkt. No. 63 at 1. Because this argument was fully considered by Magistrate Judge Hummel, it will be reviewed for clear error.

As Magistrate Judge Hummel explained, *see* Dkt. No. 62 at 32, "due process does not require that disciplinary proceedings be recorded." *Jabot v. Correction Officer Minor*, No. 9:13-CV-01407, 2016 WL 5322113, *13 (N.D.N.Y. July 15, 2016) (citing *Livingston v. Griffin*, 9:04-CV-00607, 2007 WL 1500382, *5 (N.D.N.Y. May 21, 2007); *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)); *see also Jay v. Venetozzi*, No. 15-CV-147S, 2020 WL 4382001, *8 (W.D.N.Y. July 30, 2020) (citation and quotation omitted) ("DOCCS regulations require that a hearing be electronically recorded, but they do not require a tape number on a written statement of the disposition of a disciplinary hearing. . . . [V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process'"); *Harrison v. Querns*, No. 06-

5

CV-0296F, 2008 WL 495505, *4 (W.D.N.Y. Feb. 21, 2008) (citing *Dixon v. Goord*, 224 F. Supp.2 d 739, 744 (S.D.N.Y. 2002)).

Plaintiff has not presented any arguments or case law to the contrary. Thus, the Court finds no clear error in Magistrate Judge Hummel's conclusion as to the due process claim against Defendant Murphy.

**D.   Defendant Lagree's Objections to Plaintiff's Fourth Amendment X-ray Claim**

Defendant Lagree argues that he will be prejudiced if Plaintiff's X-ray claim is permitted to proceed because of the "inability to depose Plaintiff on that search, conduct discovery, or submit detailed declarations in support of their motion for summary judgment addressing those claims. Defendants did not do so because the Court did not permit those claims to proceed" following initial review of Plaintiff's *pro se* complaint. Dkt. No. 64 at 5. Defendant Lagree argues that he does not know what type of search Plaintiff is challenging; whether it is an X-ray policy for incarcerated individuals on drug watch or the specific X-ray search conducted by Defendant Lagree. *See id.* Defendant Lagree argues that different legal frameworks apply depending on the type of search being challenged. *See id.* (citing *Bell v. Wolfish*, 441 U.S. 520 (1979); *Turner v. Safley*, 482 U.S. 78 (1987)). Defendant Lagree asserts that "permitting Plaintiff, without notice, to shift to a different type of search in a different context materially disadvantages Defendants as it will require Defendants to go to trial without knowing the law under which the case will be tried." *Id.* at 6.

In Plaintiff's complaint, he alleged that while on drug watch, Defendant Lagree asked Plaintiff if he would submit to an X-ray and Plaintiff responded, "No." Dkt. No. 1 at 8. Defendant Lagree "beg[a]n to tell [Plaintiff] that in order to leave [Plaintiff] had to take 2 clean defecations & 2 X-rays. [Plaintiff] immediately told [Defendant Lagree] clearing 2 X-rays is not

part of procedure." *Id.* Plaintiff twice defecated but was not released. *See id.* Plaintiff then requested an X-ray and was told that the X-ray was not working so he had to wait. *See id.* He submitted to an X-ray the following day. *See id.* During the X-ray, Plaintiff was asked if he had any metal in his teeth which he affirmed. *See id.* Plaintiff "was then taken back to the dry room [and] began to demand to speak to the [Lieutenant] to let him know that the officers were violating [his] rights." *Id.*

Plaintiff was told that the officers saw something in his teeth and would have to take another X-ray. *See id.* Plaintiff was taken again to be X-rayed and he was not "given [a] radiation suit to prevent [him] from radiation." *Id.* at 9. Plaintiff "was placed on [his] back again naked [and] scanned from head to toe." *Id.* He "wrote a grievance complaining about the series of events." *Id.* Plaintiff alleged that Defendant Lagree "failed to give [him] any explanation, failed to write [him] a ticket of any contraband to justify the reason he placed me in the dry room nor give me a reasonable explanation for why [he] had to submit to an X-ray." *Id.*

In Plaintiff's response to Defendants' motion for summary judgment, he stated that "[a]fter reading [Defendant Lagree's] declaration, [he has] not seen any rule of directive that an officer can demand 2 x-rays from an inmate, whether an Inmate swallowed something or not." Dkt. No. 56 at 4. Plaintiff noted that "3 defecations will produce that object which is normal policy & practice. Looking into someone's body is the ultimate intrusion [and] if not illegal should be challenged at the highest court." *Id.* Plaintiff explained that he "was told [he] must submit to 2 x-rays." *Id.* Plaintiff averred that body camera footage would reveal that he never swallowed anything so "there should have never been [any] x-rays." *Id.* Plaintiff stated that "[t]he first x-ray [he] was forced to give was on [A]ugust 12, 2021[,] where they (c.o.'s) say they seen [sic] an object in [his] teeth, for which [he] explained to them [he] had a metal filling in [his] teeth [and]

to go speak with dental to confirm." *Id.* at 7.  Plaintiff argued that "[f]orcing an inmate to comply with 3 x-rays is a violation of [his] freedom from unlawful search [and] seizure." *Id.* at 8.  Plaintiff asserted that he has "the right to [d]eny x-ray [and] t[o] only comply with a search of 3 defecations." *Id.*

In his reply, Defendant Lagree argued that Plaintiff raised the issue of a Fourth Amendment violation related to the X-ray searches for the first time in his response.  *See* Dkt. No. 58 at 2.  Although Defendant Lagree contended that the claim did not survive the Court's initial review, he addressed the merits of the claim.  *See id.* at 3.  Defendant Lagree asserted only that "even if the Court were to consider such allegations at this late juncture, 'because x-ray searches are less invasive than a strip search … a prisoner's rights are not violated by x-ray searches conducted pursuant to a reasonable prison policy.'" *Id.* (quoting *Manley v. Ramos*, No. 13-CV-2662, 2014 WL 1496094, *2 (S.D.N.Y. Apr. 16, 2014)).  Defendant Lagree argued that Plaintiff's "allegations are not sufficient to substantiate a claim relative to the Fourth Amendment." *Id.*  Defendant Lagree did not otherwise address the merits of the X-ray claim.

Defendant Lagree is correct that this Court's Decision and Order from May 24, 2022, accepted Plaintiff's complaint "with respect to the Fourth Amendment claims asserted against defendants 'C.O. John Doe 1, 2, 3,' and Lagree." Dkt. No. 12 at 17.  In analyzing the possible Fourth Amendment claims, the Court stated that "[l]iberally construed, the complaint asserts a Fourth Amendment claim based on allegations that plaintiff's cell was unlawfully searched and he was subjected to an unjustified strip-search on August 4, 2021." *Id.* at 6.  The Court did not discuss the X-rays in relation to a purported Fourth Amendment claim.  *See id.* at 6-8.  The Court did discuss the X-rays in its recitation of the factual background underlying Plaintiff's complaint.  *See id.* at 13-16.

In his Report-Recommendation and Order, Magistrate Judge Hummel thoroughly analyzed this issue. *See* Dkt. No. 64 at 13-16. Magistrate Judge Hummel concluded that "[D]efendants would not be prejudiced by the inclusion of [P]laintiff's Fourth Amendment claim based upon the x-ray searches because such claim arises from a similar nucleus of operative facts and asserts similar legal theories as the Fourth Amendment claim already alleged." *Id.* at 15.

Defendant Lagree does not disagree that the X-ray claim is derived from the same set of facts as the strip search claim. *See* Dkt. No. 64 at 4-6. Rather, Defendant Lagree argues only that he is prejudiced because he was not able to depose Plaintiff about the X-rays or seek discovery about them. *See id.* Plaintiff responds in opposition to Defendant Lagree's objections, noting that Defendants' counsel chose to focus Plaintiff's deposition on the strip search despite Plaintiff raising issues with the X-rays from the beginning of the case. *See* Dkt. No. 65 at 1.

"It is well-established that a party 'generally may not assert a cause of action for the first time in response to a summary judgment motion.'" *Design Partners, Inc. v. Five Star Elec. Corp.*, No. 12-CV-2949, 2017 WL 818364, *17 (E.D.N.Y. Mar. 1, 2017) (quoting *Henry v. Metro. Transp. Auth.*, No. 07-CV-3561, 2014 WL 4783014, *10 (S.D.N.Y. Sept. 25, 2014)); *see also Superior Site Work, Inc. v. NASDI, LLC*, No. 2:14-CV-01061, 2018 WL 3716891, *22 (E.D.N.Y. Aug. 3, 2018) (collecting cases to support the contention that a response to a summary judgment motion cannot be used to amend a complaint). "Claims that are entirely new—that is, claims based [on] new facts and new legal theories with no relation to the previously pled claims—are commonly rejected at the summary judgment stage due to the prejudice to the defendant." *Henry*, 2014 WL 4783014, *10. Such prejudice can occur where a defendant "may not have had fair notice of the claim and consequently may not have had an adequate opportunity for discovery." *Id*. "In contrast, 'claims that are related to or are mere variations of previously pleaded claims—

9

that is, claims based on the same nucleus of operative facts and similar legal theories as the original claims—may be raised on a motion for summary judgment." *Id.* They may be raised "where the defendant was clearly on notice from the complaint and was not unfairly prejudiced.'" *Id.* (quoting *Coudert v. Janney Montgomery Scott, LLC*, No. 3:03-CV-324, 2005 WL 1563325, *2 (D. Conn. July 1, 2005)); *cf.* FED. R. CIV. P. 15(b)(1) ("If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits").

As Plaintiff states in his response to Defendant Lagree's objections, he addressed the X-rays in his complaint. *See* Dkt. Nos. 1, 65. Plaintiff's X-ray claim stems from the same facts as the strip search allegations, and it relies on the same law as applicable to the strip search—the Fourth Amendment. *See Hanlin v. Mitchelson*, 794 F.2d 834, 841 (2d Cir. 1986) ("[T]he new claims are merely variations on the original theme of malpractice, arising from the same set of operative facts as the original complaint. Moreover, both the contract and negligence theories set forth in the proposed amended complaint were forecast by the original malpractice allegations"). Defendant Lagree was also afforded the opportunity to submit a reply and took advantage of that opportunity in which he addressed the merits of the X-ray claim. *See* Dkt. No. 58 at 3. Notably absent from Defendant Lagree's objections is any contention that Plaintiff's claims regarding the X-rays is "new." *See* Dkt. No. 64.

Defendant Lagree contends that he is prejudiced by the failure to depose Plaintiff on the claims related to the X-rays. *See* Dkt. No. 64 at 5. During Plaintiff's deposition, he testified that he was taken "to medical" and told that he "ha[d] to take an X-ray." Dkt. No. 50-5 at 60. Plaintiff

10

stated that he "didn't want to subject myself to no radiation for no reason. And they decided they want to put me in the dry room and they force me to take two x-rays and given two – before I could leave." *Id.* at 60-61. Counsel did not ask Plaintiff about the X-rays. Plaintiff is not required to raise additional information during his deposition on issues about which counsel did not inquire. *See Boulder Falcon, LLC, v. Brown*, 345 F.R.D. 511, 517 (D. Utah 2023) ("Depositions are opportunities to ask a witness questions and not to debate the witnesses answers"); *Hayes v. N.Y.S. Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996) (disagreeing with the district court's decision to discredit portion of the plaintiff's second deposition because "[i]n short, defense counsel did not ask questions at the first deposition sufficient to elicit the specific content of the conversation . . . ."); *United States v. Mangano*, No. 16-CR-540, 2022 WL 65775, *64 (E.D.N.Y. Jan. 6, 2022) ("Yet, despite receiving vague, equivocal, and non-responsive answers from Singh during the deposition, opposing counsel at the deposition never asked Singh what should have been obvious questions . . . . This is another reason why the vague and ambiguous deposition testimony . . . does not establish that Singh perjured himself . . .").

As Defendant Lagree states, his declaration did not discuss the X-rays, only the strip search. *See* Dkt. No. 64 at 5; *see also* Dkt. No. 50-3 at 1-5. It is also true that the Court did not expressly construe a Fourth Amendment claim related to the X-rays. Dkt. No. 12 at 6, 17. The Court did, however, discuss the X-ray allegations in its factual background section, the Court did not expressly dismiss claims related to the X-ray searches, and the Court permitted "Fourth Amendment claims," without limitation, to proceed. *Id.* at 4-5, 17; *see also Read v. Calabrese*, No. 9:11-CV-459, 2013 WL 5506344, *4 (N.D.N.Y. Aug. 29, 2013) ("In their objections to the R & R, defendants argue that the law of the case doctrine should preclude the court from finding a retaliation or due process claim in Read's amended complaint when the court was unable to

11

discern such claims in Read's original complaint. . . . Here, given Read's *pro se* status, and the additional allegations made in Read's amended complaint implicating a retaliation claim, the court is not persuaded by defendants' law of the case argument").

"[A]s many courts have recognized, the PLRA 'does not obligate the court to screen for every possible defect in a complaint, nor is the screening process infallible.'" *Heard v. Parker*, No. 3:17-CV-01248, 2018 WL 6435863, *4 (M.D. Tenn. Dec. 6, 2018) (quoting *Steinmetz v. Annucci*, No. 17-CV-01000, 2018 WL 4765128, *2 (W.D.N.Y. June 28, 2018); citing, *inter alia*, *Burfitt v. Bear*, No. 1:15-CV-730, 2016 WL 4992017, *2, n.2 (S.D. Ohio Aug. 15, 2016) ("Due to time constraints, the limited review authorized by the PLRA, and the fact that the Court is not an advocate, the Court's *sua sponte* review of a complaint on initial screening is a relatively cursory one")); *Rogers v. City of Stuart Police Dep't*, No. 20-CV-14044, 2020 WL 5947425, *1 (S.D. Fla. Sept. 4, 2020) ("A complaint's survival of § 1915(e) screening, 'which was undertaken before [d]efendants were served and appeared, does not preclude a subsequent deeper analysis of whether the Complaint states a claim with the assistance of fully-briefed motions under Rule 12(b)(6).' . . .") (quotations omitted).

The Court broadly construed Plaintiff's complaint and put Defendants on notice of Plaintiff's assertion that his Fourth Amendment rights were violated based on the facts set forth in his complaint. *See Espinoza v. N.Y.C. Dep't of Transportation*, 304 F. Supp. 3d 374, 384 (S.D.N.Y. 2018) ("Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense") (quoting *Beckman v. U.S. Postal Serv.*, 79 F.Supp.2d 394, 407 (S.D.N.Y. 2000)); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (concluding that language in the *pro se* plaintiff's "submissions is 'broad enough to

cover' the negligent guard theory. . . .  This language must be liberally construed"); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) ("[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest").

Because Plaintiff raised allegations concerning the X-rays in his complaint, the Court reiterated them in its Decision and Order, the allegations stem from the same set of facts as the strip-search claim, the legal theory is the same (an unconstitutional search under the Fourth Amendment), and Defendant Lagree was afforded an opportunity to reply, the Court concludes that Plaintiff's X-ray claim is not new and was appropriately considered by Magistrate Judge Hummel on summary judgment. *See White v. Doe*, No. 3:16-CV-01874, 2021 WL 4034164, *3 (D. Conn. Sept. 3, 2021) (allowing a claim to proceed on summary judgment where the plaintiff "expressly alleged a Fourth Amendment claim," "[t]he Court conclude[d] that it was error for the initial review order not to acknowledge or address the Fourth Amendment claim," and the parties were allowed to submit supplemental briefing) (quotation omitted).

Defendant Lagree argues that he would be prejudiced by the Court allowing the X-ray claim to proceed because he does not know whether Plaintiff is challenging a specific X-ray search or a policy related to X-ray searches. *See* Dkt. No. 65 at 5-6. Defendant Lagree correctly sets forth the requisite Fourth Amendment inquiry that a Court must conduct where a claim concerns an incarcerated individual's right to bodily privacy as set forth by the Second Circuit in *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016). *See id.* In *Harris*, the Second Circuit explained that the assessment of Fourth Amendment bodily privacy claims can differ depending on whether the incarcerated individual challenges a prison regulation or an isolated search. *See Harris*, 818 F.3d at 57 (citing *Turner v. Safley*, 482 U.S. 78 (1987); *Bell v. Wolfish*, 441 U.S. 520 (1979)).

Defendant Lagree has never identified a policy related to X-ray searches nor provided one to Plaintiff or the Court. *See* Dkt. No. 62 at 21-23. Plaintiff likewise does not identify any such policy. *See* Dkt. Nos. 1, 56, 65. As explained, the Court broadly construed Plaintiff's complaint as alleging a Fourth Amendment claim which it permitted to proceed. Defendants had the opportunity to ask Plaintiff any questions they wanted during Plaintiff's deposition. The Court agrees with Magistrate Judge Hummel that Plaintiff's Fourth Amendment X-ray claim should proceed to trial where Plaintiff will bear the burden of proving that he was improperly subject to X-ray searches under the Fourth Amendment.

The Court reviewed the remaining aspects of Magistrate Judge Hummel's Report-Recommendation for clear error and finds none.[1]

## IV. CONCLUSION

After carefully reviewing the parties' submissions, Magistrate Judge Hummel's Report-Recommendation and Order, the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation and Order (Dkt. No. 62) is **ADOPTED**; and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 50) is **DENIED** as to Plaintiff's Fourth Amendment X-ray claim against Defendant Lagree; and the Court further

---

[1] Plaintiff asks whether "the original due process charge against Lagree still stand[s]." Dkt. No. 66 at 5. Plaintiff asserts that he was "punished for not committing to an X-ray by keeping him confined in the dry room without a warrant, hearing [or] due process." *Id.* When initially reviewing Plaintiff's complaint, the Court construed "a procedural due process claim against defendant L[a]gree with respect to plaintiff's confinement in the dryroom." Dkt. No. 12 at 11. The Court concluded that Plaintiff failed to state such a claim. *See id.* at 13. Plaintiff did not challenge that conclusion; therefore, there is no pending due process claim against Defendant Lagree.

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 50) is otherwise **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Memorandum Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 26, 2024
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge